**CITY OF FLAT RIVER, Missouri, a municipal corporation, Plaintiff-Appellant,**

**v.**

**Odessa EDGAR, Defendant-Respondent.**

**No. 32479.**

St. Louis Court of Appeals.

Missouri.

Feb. 21, 1967.

Smith & Colson, Farmington, J. B. Schnapp, Fredericktown, for appellant.

Roberts & Roberts, Farmington, for respondent.

TOWNSEND, Commissioner.

In this condemnation proceeding a nine-man verdict for $4000 in favor of defendant-landowner was returned and judgment was entered thereon. A hearing was had upon defendant's motion for a new trial at which defendant adduced evidence in support of two of her assignments of error, namely,

"14. Because two members of the jury were members of a religious sect constitutionally opposed to serving on a jury and had been advised by the leaders of their sect or church not to serve on the jury, and because said jurors refused to take a part in the deliberations and simply remained silent, stating that they would do whatever the majority agreed upon.

"15. The defendant did not know that said jurors belonged to a religious sect, as such, and that they would not take a part in deliberations and help arrive at a verdict, and that the defendant was not negligent in failing to discover that said jurors would refuse to take any part in the deliberations or action toward arriving at a verdict."

At the hearing on the motion the evidence introduced by defendant consisted of the deposition of the foreman of the jury in which he testified

"Q. Reverend Short, after the case was tried, and the argument to the jury, did the twelve men and women retire to a jury room to deliberate upon the issues as given to you by the Court in its instructions?

A. Yes.

Q. I will ask you, Reverend Short, whether all twelve of the members of that jury participated in the deliberation?

A. No, not really.

Q. Will you state how many did not participate?

A. Two.

Q. Will you tell us what they said if anything concerning their participation?

A. They simply said, 'We don't have to take any part in this, do we?' 'We don't have to enter into the deliberations'.

Q. Did they make any statement as to what the rest of you might do, or what could be done?

A. One of them said whatever we did was all right.

Q. Were there some ballots taken?

A. Yes, sir.

Q. Did these two jurors ballot? A. No.

Q. Did these two jurors participate in any of the discussion or make any statements concerning the matter other than to say that whatever you all did would be all right with them?

A. No.

Q. Was any statement made by either of these two jurors concerning their church, or matters of that kind?

A. No.

Q. Had there been previously in other jury deliberations?

A. Yes.

Q. On previous juries had these same two jurors served when you had also served on the jury?

A. Yes. On one other occasion.

Q. On that occasion did these two jurors take any part in the deliberations?"

\* \* \* \* \* \*

"A. They took some part in the deliberations before.

Q. Did they make any statement at any time when you were serving with them on a jury concerning their church or activities?

A. Yes, sir. In the previous instance you just referred to."

\* \* \* \* \* \*

"Q. What was their statement concerning their church?

A. One said, 'My church doesn't want me to take any part in this anyway.'"

Objections by plaintiff to all questions and answers were appropriately made both upon the taking of the deposition and the reading of the deposition into the record.

The court entered its order sustaining defendant's motion for a new trial "on the ground that two of the jurors selected to hear said case were not qualified jurors (points 14 and 15 of defendant's motion for new trial)."

The transcript shows that upon voir dire examination the jurors were asked the usual question whether any one of them knew of any reason why he couldn't render a fair and impartial verdict; there was no expressed answer.

The only point made by appellant is that the evidence upon which the court based its decision was incompetent and that for the reason that a juror will not be heard to impeach a verdict, citing, among other cases, Romandel v. Kansas City Public Service Co., Mo., 254 S.W.2d 585; Reich v. Thompson, 346 Mo. 577, 142 S.W.2d 486, 129 A.L.R. 795. Respondent counters that the evidence did not go to the impeachment of the verdict but to the qualifications of the two persons to sit as jurors in the first instance.

It has been held by this court that the rule which excludes juror evidence which impeaches a verdict is limited to matters inherent in the verdict, Sadlon v. Richardson, Mo. App., 382 S.W.2d 9, that is to say, for the exclusion rule to have application the proffered evidence must relate to matters involved in the conduct of jurors in arriving at a verdict, that such evidence must relate to the verdict qua verdict. Here however we are dealing with a matter more fundamental even than a verdict; we have had presented to us the inescapable question of the capacity, the legal competence, of a group of persons to render a lawful verdict.

Under the constitutional guarantee of jury trial, a party litigant is entitled, unless he waives the right, to have his case tried by twelve impartial qualified jurors. Implicit in "trial" by twelve impartial qualified persons is the concept that there be consideration of the issues and the evidence and deliberation thereon upon the part of all twelve and that concept finds expression in our decided cases: "Even though three-fourths of them can decide a civil case, parties are entitled to have that decision, whether for them or against them, based on the honest deliberations of twelve qualified men." Lee v. Baltimore Hotel Co., 345 Mo. 458, 136 S.W.2d 695, 698, 127 A.L.R. 711; Piehler v. Kansas City Public Service Co., 357 Mo. 866, 211 S.W.2d 459, 463. The testimony of Mr. Short, the jury foreman, establishes that the two persons in question did not participate in the jury's deliberations; not only did they decline to participate in the matter of considering the evidence and the issues but they expressly surrendered to the other ten their function of arriving at a decision. Such conduct on their part constituted a complete repudiation of the answers which they gave upon the voir dire examination that they would render an impartial verdict. That those answers were implied from their silence is immaterial. The questions of counsel called upon each to state whether there was any reason why he

could not render a fair verdict. Silence was as emphatic as if the particular venireman had said "No", and was a representation that he would participate in the process leading to a verdict. That representation was a misrepresentation—a false answer—resulting from the concealment of attitude and intention, if the intention not to participate existed at the time of the examination.

The testimony of the jury foreman makes clear the reasons why the two persons declined to act as jurors—their adherence to the tenets of their church immobilized them. No matter how sincerely their religious convictions inhibited them from so acting, that inhibition did not justify the making of false representations. Being false, such representations disqualified them as jurors. The disqualification flowed from their answers and their subsequent inability to participate in the rendering of any verdict. We may take it that if that inability existed at the time of jury deliberations it existed at the time of the voir dire examination. They failed *to disclose that existent inability to render* a verdict although both counsel put to them the question regarding rendition of a fair and impartial verdict. Hence, the admission of the testimony of the jury foreman did not violate the rule that juror evidence cannot be admitted to impeach the jury verdict.

We cannot say that the lack here of two qualified jurors was not prejudicial.

The judgment is affirmed.

PER CURIAM:

The foregoing opinion by TOWNSEND, C., is adopted as the opinion of this Court. Accordingly, judgment is affirmed.

ANDERSON, P. J., and RUDDY and WOLFE, JJ., concur.