**Melvin ROACH, Plaintiff-Appellant,**

v.

**CONSOLIDATED FORWARDING COMPANY and Teamsters Local 600, Defendants-Respondents.**

**No. 45930.**

Missouri Court of Appeals,
Eastern District,
Division One.

Jan. 31, 1984.

Kenneth M. Chackes, Patricia L. Cohen, St. Louis, for plaintiff-appellant.

H. Kent Munson, St. Louis, for Consolidated Forwarding Co.

Cary Hammond, Richard Shinners, St. Louis, for Local 600.

SNYDER, Judge.

Plaintiff-appellant, Melvin Roach, sued his former employer, respondent Consolidated Forwarding Company (Consolidated), for wrongful discharge and his union, respondent Teamsters Local 600 (Local 600), for breach of its duty of fair representation. The jury returned a verdict for both respondents and appellant appeals from the ensuing judgment. The judgment is affirmed.

Appellant was employed by Consolidated as a truck driver and was discharged for "recklessness resulting in serious accident while on duty," as provided in a collective bargaining agreement. Appellant maintained the accident was due to a mechanical defect in the tractor trailer. Whether a tractor trailer defect or recklessness on the part of appellant caused the accident is the determinative question.

The accident which resulted in the discharge of appellant took place at approximately 5:00 a.m. on March 1, 1973 when a tractor trailer rig, being operated by appellant, left the road near Pontiac, Illinois and overturned in the median, virtually destroying the tractor trailer and its contents.

After appellant was discharged he filed a grievance on March 16, 1973 in which he contended that the accident was the result of a faulty fifth wheel on the tractor portion of the rig, the fifth wheel being the flat metal plate on the bed of the trailer which is the coupling device for the tractor. Appellant said the fifth wheel was damaged when he drove over a railroad track or when he tried to change lanes. An expert witness also testified that the fifth wheel could have been damaged by going over the railroad track or by turning.

Although appellant testified the union changed the business agent who was to represent him shortly before the hearing which was held before a grievance committee of six members, three each from the union and management, an experienced business agent from the union represented appellant at the hearing. There was evi-

dence that the union's handling of the grievance was somewhat perfunctory.

Appellant claimed that there was little investigation of the accident or the history of the truck which was wrecked, and that he was not notified of the hearing until the morning of the day it was scheduled. There was also evidence that appellant had actively campaigned against the incumbent union president in support of the incumbent president's opponent.

The committee denied the grievance in an unanimous decision, although there was testimony that a four-to-two decision was considered unanimous. Appellant, in an unusual procedure, was permitted to file a second grievance on February 8, 1974 and was allowed another committee hearing at which he presented evidence. The second grievance was also denied.

Appellant was then permitted to file a third grievance on April 7, 1975 in which he claimed that he had new evidence and that his original letter of discharge was invalid. After a third hearing, the third grievance was denied by the committee. There was unspecific evidence about a fourth grievance, but the record shows only three hearings.

In 1975 appellant filed his lawsuit against Consolidated and Local 600, the case having been first tried in October of 1981.[1] Appellant won that trial and obtained a verdict for $70,000 against both defendants, but the trial court granted a new trial on the ground that the verdict was against the weight of the evidence.

Appellant sought damages in the form of alleged lost earnings as a result of his discharge, claiming that had he not been discharged he would eventually have become an employee of another trucking company as a result of various acquisitions and transfers of drivers. Appellant was incarcerated for nine months on criminal charges during part of the time for which he claimed lost wages. There was evidence appellant's employment would have been terminated when he failed to respond to work calls after his imprisonment. There was also evidence that he would have been laid off from the successor trucking company, as were other drivers with seniority rights similar to those appellant would have had if he had not been discharged.

The jury's verdict in favor of defendants was signed by nine jurors and at the hearing on the motion for a new trial appellant attempted to offer evidence that one of the jurors who signed the verdict had announced early in the deliberations that he would vote either way in order to go home and that if there were eight votes for either the plaintiff or the defendants, he would cast the deciding vote. Appellant offered to produce testimony from two jurors who were subpoenaed and present in the courtroom, but was not allowed to do so by the trial court. It came into the record as an offer of proof. The trial court rendered judgment in favor of defendants in accordance with the jury verdict and plaintiff Roach appealed.

Appellant briefs eight points relied on. He asserts the trial court erred in: (1) refusing to hear the testimony of two jurors at the hearing on his motion for a new trial; (2) giving Instruction No. 13 which defined "just cause;" (3) giving Instruction No. 14 to the effect that negligence on the part of the union is not sufficient to establish a breach of duty of fair representation; (4) giving Instruction No. 12 on damages; (5) admitting speculative testimony from a terminal manager who said that he would have discharged appellant when appellant was jailed; (6) admitting testimony about the truck plaintiff was driving because the testimony had not been disclosed in response to appellant's interrogatories; (7) excluding appellant's testimony that there was no charge of recklessness made by the state police; and (8) excluding testimony that the union president would not properly represent a member who had campaigned against him.

1. No point has been raised and the parties have not explained why the results of the grievance hearings did not constitute binding arbitration so that appellant would be precluded from suing Consolidated for wrongful discharge.

Appellant first contends that the trial court erred in refusing to consider the testimony of two jurors after the verdict had been returned. The two jurors would have testified, at the motion for a new trial, according to the offer of proof, that a third juror at some time early in the deliberations indicated he would vote whichever way eight of the other jurors decided because he wanted to go home and that the juror from that point on did not participate in the deliberations of the jury. The juror in question signed the verdict. It was not error to exclude the two jurors' testimony.

 The rule is that "a juror may not, over objection, be heard to impeach his and the jury's verdict." *Mayberry v. Clarkson Construction Company*, 482 S.W.2d 721, 724[2–4] (Mo.1972); *Norwood v. Lazarus*, 634 S.W.2d 584, 589[6] (Mo.App.1982). Therefore, the trial court ruled properly in refusing to allow jurors to testify.

Appellant cites *City of Flat River v. Edgar*, 412 S.W.2d 537 (Mo.App.1967). Arguably, *City of Flat River* could have some application here inasmuch as in both cases the jurors in question refused to engage in the jury's deliberations. But in *City of Flat River* the refusal to participate was based on a disqualifying factor, the two jurors' religion, which existed at the time of the voir dire and which the jurors failed to disclose in answer to a direct question about their ability to render a fair and impartial verdict. *Id.* at 540[6]. The juror in the case under review, according to the offer of proof, was a qualified juror at the time of the voir dire and did participate in the deliberations for an unknown period of time.

Moreover, *Mayberry v. Clarkson Construction Company, supra,* at least by implication, overruled *City of Flat River, supra,* because in *Mayberry* the supreme court held that even evidence that two jurors failed to answer truthfully voir dire questions about their qualifications was not admissible to impeach a jury verdict. *Mayberry v. Clarkson Construction Company, supra,* 1.c. 724[2–4]. Appellant's point is denied.

Appellant's next contention is that the trial court erred in defining "just cause" [2] because if the facts of the case were in favor of Consolidated, it could discharge appellant only for recklessness and because, even if the term "just cause" could be defined, the definition given misstated the law. The point is denied.

The first issue is whether the phrase "just cause" could be defined. Appellant's contention that Consolidated was required to show that appellant was driving recklessly is only half true. The verdict directing instructions,[3] which appellant himself submitted, required the jury to find that respondent Consolidated discharged appellant "without just cause" in that appellant was not driving recklessly. The arbitration agreement specified that appellant could be discharged only for just cause which, under the agreement, included recklessness.

**2.** The trial court defined "just cause" in Instruction No. 13 as follows:

As used in these Instructions, the term "just cause" means a real cause or basis for dismissal as distinguished from an arbitrary whim or caprice—that is, a cause or ground that a reasonable employer, acting in good faith under the collective bargaining agreement here in question, would regard as good and sufficient reason for terminating the services of an employee.

**3.** Instructions No. 6 and 8:

Appellant submitted two verdict directors, one for each defendant. Both hypothesized the same elements and differed only in the name of the defendant and the label of the cause of action:

On plaintiff's claim that defendant Consolidated Forwarding Co. discharged plaintiff in violation of the collective bargaining agreement, your verdict must be for plaintiff if you believe;

First, defendant Consolidated Forwarding Co. discharged plaintiff without just cause, in that plaintiff was not driving in a reckless manner resulting in a serious accident; and

Second, the defendant union acted dishonestly, in bad faith, or with hostility, discrimination or arbitrariness, in that it failed to properly prepare for and failed to participate in the presentation of plaintiff's grievance at his first hearing; and

Third, as a result of the conduct set forth in the first and second paragraphs plaintiff suffered a loss.

Thus, the jury was obligated to consider whether Consolidated acted without just cause.

■ That the phrase "just cause" appears in the jury instructions does not necessarily mean that the trial court should have defined it. The meaning of non-technical, readily understandable phrases need not be explained in an instruction, but where technical legal terms are used, they must be defined. *Wright v. Edison,* 619 S.W.2d 797, 802[9, 10] (Mo.App.1981).

■ The issue is thus whether "just cause" is a technical legal term. "Just cause" in the context of collective bargaining agreements is a term of art which has developed its meaning through labor arbitration hearings. See generally Elkouri and Elkouri, How Arbitration Works, p. 612 (3d Ed.1979). Thus, the trial court was correct in deciding to define "just cause."

■ The next issue is whether the trial court's definition of "just cause" was an accurate statement of the law. The term "just cause" has not been defined generally by Missouri cases. However, labor arbitrators are often confronted with the question whether an employer has violated a collective bargaining agreement with his employees by discharging one or more employees without just cause. Elkouri and Elkouri, *supra,* consider the following discussion of just cause to be a good statement of its meaning:

> Many collective bargaining agreements are silent as to management rights. In this situation management is deemed to have reserved all rights not granted. Teller, Management's Rights in Collective Bargaining, (1947) pp. 94–99. It is increasingly common, however, to include in such contracts a "management's right," "management's prerogatives" or "reservation of management's rights" clause. Those set forth in more or less general terms (and in some cases rather specific terms) the rights reserved to management. Where this is done it is common to include the right to suspend and discharge for "just cause," "justifi-
> able cause," "proper cause," "obvious cause," or quite commonly simply for "cause." There is no significant difference between these various phrases. These exclude discharge for mere whim or caprice. They are, obviously, intended to include those things for which employees have traditionally been fired. They include the traditional causes of discharge in the particular trade or industry, the practices which develop in the day-to-day relations of management and labor and most recently they include the decisions of courts and arbitrators. They represent a growing body of "common law" that may be regarded either as the latest development of the law of "master and servant" or, perhaps, more properly as part of a new body of common law of "Management and labor under collective bargaining agreements." They constitute the duties owed by employees to management and, in their correlative aspect, are part of the rights of management. They include such duties as honesty, punctuality, sobriety, or, conversely, the right to discharge for theft, repeated absence or lateness, destruction of company property, brawling and the like. Where they are not expressed in posted rules, they may very well be implied, provided they are applied in a uniform, non-discriminatory manner.

*Worthington Corp. and United Electrical, Radio and Machine Workers of America, Local 259,* 24 LA 1, 6–7 (1955). Viewed in light of the *Worthington Corp.* standard, the trial court's definition of "just cause" is an accurate statement of the law.

■ Appellant argues that the definition erroneously suggests that just cause is equivalent to sufficient cause because of the reference to "sufficient reason," and cites *Vulcan-Hart Corp. v. Stove, Furnace & Allied Appliance Workers,* 516 F.Supp. 394 (E.D.Mo.1981), aff'd. 671 F.2d 1182 (8th Cir.1982). "... [T]he term 'just cause' is not necessarily synonymous with 'sufficient cause.'" 516 F.Supp. at 395[1, 2]. The instructions do not allow the jury to substitute a finding of "sufficient cause"

for "just cause." Instead, the jury was required, giving consideration to all the instructions, to make an objective determination whether the termination of appellant's employment was not arbitrary or capricious but was based on a good and sufficient reason. Moreover, this court is not bound to follow the federal district court's distinction between "sufficient cause" and "just cause." *See Carver v. Schafer*, 647 S.W.2d 570, 579 (Mo.App.1983). Appellant's second point is denied.

■ Appellant next asserts that the trial court erred in instructing the jury that mere negligence on the part of respondent Local 600 is not enough to establish a breach of the duty of fair representation.[4] This court holds that mere negligence will not support a finding of a breach of the duty of fair representation and, accordingly, denies appellant's third point relied on.

■ As the exclusive bargaining representative of employees in a bargaining unit, a labor union has a statutory duty to represent fairly all those employees both in its collective bargaining with the employer and in its enforcement of the resulting collective bargaining agreement. *Vaca v. Sipes*, 386 U.S. 171, 87 S.Ct. 903, 909–910[2–4], 17 L.Ed.2d 842 (1967). This duty requires the union "... to serve the interests of all members without hostility or discrimination toward any, to exercise its discretion with complete good faith and honesty, and to avoid arbitrary conduct." 87 S.Ct. at 910[2–4].

Whether a labor union breaches its duty by negligently representing one of its members in a grievance dispute with the employer is the issue here. Although the United States Supreme Court has not addressed the issue, the lower federal courts have with unanimity held that negligent conduct alone will not support an action for breach of the duty of fair representation. Courts "... cannot hold a union liable for

breach of the duty of fair representation based on simple negligence." *Ruzicka v. General Motors Corp.*, 649 F.2d 1207, 1212[1, 2] (6th Cir.1981); *see also Early v. Eastern Transfer*, 699 F.2d 552, 555[1, 2] (1st Cir.1983), cert. den. — U.S. ——, 104 S.Ct. 93, 78 L.Ed.2d 100; *Findley v. Jones Motor Freight, Division Allegheny Corp.*, 639 F.2d 953, 960 [fn. 2] (3d Cir.1981); *Wyatt v. Interstate & Ocean Transport Co.*, 623 F.2d 888, 891[4] (4th Cir.1980); *Stephens v. Postmaster General*, 623 F.2d 594, 596[4] (9th Cir.1980); *N.L.R.B. v. American Postal Workers Union, St. Louis, Missouri Local AFL–CIO*, 618 F.2d 1249, 1255 (8th Cir.1980); *Cannon v. Consolidated Freightways Corp.*, 524 F.2d 290, 294[3] (7th Cir.1975).

■ Questions involving a labor union's duty of fair representation are governed by federal law. *See Vaca v. Sipes*, 87 S.Ct. at 910[2–4]. Extensive federal precedent requires a holding that mere negligence does not establish a breach of the duty of fair representation. Therefore, the trial court's instruction accurately informed the jury that mere negligence would be insufficient to establish a breach by respondent Local 600 of its duty to represent appellant fairly.

Appellant next complains of the trial court's Instruction No. 12 to the jury regarding appellant's duty to mitigate his damages. Appellant argues that the instruction: (1) erroneously places the burden of proof on appellant to show that he could not have earned wages after his discharge; (2) erroneously tells the jury not to award appellant damages for the period of appellant's incarceration; and (3) erroneously prevented the jury from awarding damages for the period after November, 1980.

■ The error, if any, in instructing the jury on the measure of damages was harmless because the jury ruled in favor of

---

4. Instruction 14 reads as follows:
 In determining whether or not Defendant Teamsters Local 600 acted dishonestly, in bad faith, or with hostility, discrimination or arbitrariness, the Court instructs you that, under

the laws of the United States, mere error or negligence on the part of the Union is not sufficient to establish a breach of the duty of fair representation.

defendant-respondents on the question of liability. *See Kelly v. Rieth*, 168 S.W.2d 115, 120[9, 10] (Mo.App.1943); *Ewalt v. Garnett*, 180 Mo.App. 614, 163 S.W. 943, 944[2] (1914). Point four is denied.

Appellant next contends that the trial court erred in admitting the testimony of James Rudolf, the terminal manager for Anderson Motor Services, Inc.'s St. Louis operation. But for his discharge from Consolidated Forwarding, appellant would have been a truck driver for Anderson Motor Services, Inc. by virtue of mergers of the two companies' operations. Mr. Rudolf testified that even if appellant had been working for Anderson Motor Services, Inc., he would have been discharged at the time of his incarceration. Appellant argues that this testimony "was based on pure conjecture and speculation." The point is not well taken.

■ The testimony of Mr. Rudolf was relevant only to the question of the amount of appellant's damages because this testimony concerned itself only with the hypothetical employment of appellant after his discharge. The issue is, assuming *arguendo* that the testimony was erroneously admitted into evidence, whether Mr. Rudolf's testimony was prejudicial to appellant when the jury found against appellant on the question of liability.

■ If a jury decides a case on the issue of liability without reaching the question of damages, the admission of evidence which relates only to the question of damages is not prejudicial. *See Rotundo v. Fischlowitz*, 428 S.W.2d 581, 583[3] (Mo. 1968); *Tuchschmidt v. Canavan*, 588 S.W.2d 33, 36 (Mo.App.1979). This point is also denied.

Appellant's sixth point charges trial court error in the admission of the testimony of Earl Collins regarding the history and condition of the truck appellant was driving when he had the accident because the nature of Earl Collins' testimony was not disclosed to appellant despite appellant's request for the information in interrogatories. There was no error.

■ The trial court has the discretion to impose sanctions for failure to comply with discovery procedures. *Bethell v. Porter*, 595 S.W.2d 369, 377[10] (Mo.App. 1980). The trial court's failure to impose sanctions here was not an abuse of discretion because Earl Collins' testimony had been disclosed to appellant during the course of the aborted first trial. Appellant had sufficient notice of the nature of Earl Collins' testimony before the second trial, from which the present appeal was taken, in order to allow appellant to depose Earl Collins or otherwise prepare for his testimony.

Appellant maintains in his seventh point relied on that the trial court erred in excluding appellant's testimony that the state police who investigated the accident did not charge appellant with recklessness. Specifically, the trial court sustained respondents' objection to the question: "And were you charged with any traffic violations?" This point, too, is not well taken.

■ Appellant admits the evidence would have been hearsay. The trial court excluded it based on the grounds of irrelevance and immateriality as raised by the defendant. Correct trial court decisions on the admission or exclusion of evidence will not be grounds for reversal because they are based on incorrect reasons. *Sampson v. Missouri Pacific Railroad Co.*, 560 S.W.2d 573, 586[18, 19] (Mo. banc 1978); *Benscoter v. Williams*, 600 S.W.2d 217, 222[6, 7] (Mo.App.1980).

Moreover, no offer of proof was made by appellant when the objection to the evidence was sustained. There was no error.

■ Appellant's final contention is that the trial court erred in preventing appellant's witness, former union president Ted Welch, from answering the question whether Don Lane, president of Local 600 at the time of appellant's first grievance hearing and against whom appellant had campaigned, would represent a member who had campaigned against him. Appellant made no offer of proof of what Ted

Welch's testimony would have been had the trial court permitted him to answer.

Failure to make an offer of proof as to what excluded testimony would have shown preserves nothing for appellate review of the trial court's exclusion of the testimony. *See Howe v. St. Louis Union Trust Co.*, 392 S.W.2d 625, 629[5, 6] (Mo. 1965); *Pitha v. St. Louis Public Service Co.*, 273 S.W.2d 176, 179[1–4] (Mo.1954). The point is denied.

The judgment is affirmed.

KELLY, P.J., and STEWART, J., concur.