**CITY OF KANSAS CITY,**
**Missouri, Respondent,**

v.

**Thora E. HABELITZ, Appellant.**

**No. WD 46222.**

Missouri Court of Appeals,
Western District.

April 27, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied June 1, 1993.

Application to Transfer Denied
Aug. 17, 1993.

Samuel Preston Williams, Williams & Barzee, Kansas City, for appellant.

Walter J. O'Toole, Jr., Asst. City Atty., Kansas City, for respondent.

Before ULRICH, P.J., and BRECKENRIDGE and HANNA, JJ.

BRECKENRIDGE, Judge.

Thora E. Habelitz (Habelitz) appeals from the $17,325 judgment of the trial court in favor of the City of Kansas City, Missouri (the City). Habelitz raises two points on appeal arguing that the trial court erred in: 1) sustaining the City's objections during Habelitz's cross-examination of the City's witness; and 2) refusing Instruction A which was requested by Habelitz. The judgment is affirmed.

On September 28, 1989, the City filed a petition in condemnation and a hearing was held. On December 1, 1989, the court entered an order condemning the property. The court appointed three commissioners to determine the damages Habelitz sustained as a result of the taking. The commissioners filed their report awarding damages of $41,000. The date of the taking was determined to be February 7, 1990. Both parties filed exceptions to the commissioners'

report and a trial on the exceptions was held.

At trial, the evidence was that in 1961 Habelitz and her husband purchased the property at issue, which is located at 7908 and 7910 North Oak in Kansas City, Missouri. The Habelitzes purchased two additional adjoining tracts of land in 1973 and 1988. The family residence, as well as the Clock Bait Shop, is located on the premises. Although the property is zoned residential, the business is properly and legally conducted as a legal nonconforming use. The bait shop, in addition to selling bait, sells fishing tackle, ice, soft drinks and some food.

Through the underlying condemnation action, the City acquired approximately twenty feet off the front of the Habelitz property for use in widening North Oak. The taking consists of 2,667 square feet, a permanent grading easement of 85.6 square feet, a permanent utility easement of 500 square feet and a temporary construction easement of 1,848 square feet. Although the roof overhang of the residence extends about two feet into the utility easement, the utility easement allows Habelitz to retain the "right to keep and maintain the house which now encroaches" into the utility easement. Prior to the taking at issue, customer parking was available in front and in back of the business. At the completion of construction, parking behind the business remained, while parking in front of the bait shop was eliminated.

The jury returned a verdict in favor of Habelitz in the amount of $25,600, which represented the total damages sustained by Habelitz for the taking of her property. The court offset the commissioner's award against the verdict which reduced the verdict to a judgment in favor of the City in the amount of $17,325. Habelitz filed a motion for new trial which was denied by the trial court. Notice of appeal was timely filed by Habelitz.

In Point I, Habelitz argues that the trial court erred by sustaining the City's objections during Habelitz's cross-examination of the City's expert valuation witness. Habelitz asserts that questions regarding whether the expert had assumed that the City would use the property taken in a manner as injurious to Habelitz's remaining rights in the property as the rights taken by the City would lawfully permit, were not objectionable. Habelitz argues that by sustaining the City's objections, the trial court gave the jury the false impression that the jury was not to assume the maximum use of the property taken. Habelitz argues that, as a result, she was denied her constitutional rights to payment of just compensation and due process of law.

In a civil proceeding, the trial judge has great discretion as to the extent and scope of cross-examination. *Maugh v. Chrysler Corp.*, 818 S.W.2d 658, 661 (Mo. App.1991). Issues concerning the manner of witness examination and the conduct of counsel during trial are clearly within the trial court's discretion. *Golian v. Stanley*, 334 S.W.2d 88, 92 (Mo.1960). The ruling of the trial judge will not be disturbed unless there has been an abuse of discretion. *Maugh*, 818 S.W.2d at 661.

Habelitz's allegations of error are in regard to two objections during the cross-examination of the City's valuation expert, James P. Fern. The first objection pertains to the following discourse:

Q  This is a complete taking—

A  I doubt if anybody will ever put in a five foot wide pipe.

Q  You're speculating that they would never do it. You understand, do you not, that under the law it must be assumed that the taker of that property for that easement or any other take, it is assumed that they will use it to be the extent most injurious to the property owner?

Mr. O'TOOLE: Your Honor, I object to that statement of the law. It is not correct, and I request that the questions be—

THE COURT: I'll sustain the objection. I'll ask you to rephrase your question.

The following discussion then occurred at the bench, out of the hearing of the jury:

MR. WILLIAMS: Judge, we're going to get into this, and it's the maximum damage rule, and that's precisely what the clause says, that the taking must assume the most injurious use that the taker can exercise and to the greatest ultimate damage of the property owner. There is no in between. There are no degrees. It's just simply that.

MR. O'TOOLE: It is presumable that we utlitize [sic] the easement to the full extent of the easement. That, I agree, is the law.

THE COURT: The problem I have is the way you phrased your question; that the law says that—you phrased your question in such a way that you said that the law says and demands that and then phrased it. That's why I said rephrase the question. If you say it's presumed under the circumstances and then go ahead—

MR. O'TOOLE: Your Honor, the law presumes maximum damages. It presumes full use of the easement. The way it was stated is extremely prejudicial and not correct. That's my objection.

THE COURT: In other words, what you've got is two questions here. It presumes maximum use which could result in damage. There are your questions.

MR. WILLIAMS: Okay, I'll ask it again.

After the proceedings were returned to open court within the hearing of the jury, the following discourse, containing the second objection, took place:

Q [By Mr. Williams] Mr. Fern, I'll rephrase my question. Do you understand that the law presumes that the condemnor, the City in this instance, will use their easement to its ultimate end and to the ultimate injury of the property owner?

MR. O'TOOLE: Your Honor, I object to that statement of the law.

THE COURT: I'll have to sustain it as to the last part.

■ In making the objections, counsel for the City articulated the specific ground that the two questions contained an incorrect statement of the law. The trial court sustained the objections, however, on the basis that the form of the questions was impermissible. "A specific objection sustained ... is sufficient, though naming an untenable ground, if some other tenable ground existed." 1 Wigmore, Evidence § 18 (Tillers rev. 1983); *See also* 1 McCormick, Evidence § 52 (4th ed. 1992). Correct trial court rulings on the admission or exclusion of evidence will not constitute grounds for reversal even though based on erroneous reasons. *Roach v. Consolidated Forwarding Co.*, 665 S.W.2d 675, 682 (Mo. App.1984).

■ The trial court did not abuse its discretion in sustaining objections to questions eliciting inadmissible testimony. Contrary to Habelitz's assertion on appeal, the questions objected to did not ask whether the witness assumed that a certain statement was the law. The questions, instead, included the following language: "You understand, do you not, that under the law it must be assumed ...;" and "Do you understand that the law presumes...." The questions were improper attempts by counsel to state the law of condemnation. It is the function of the court, and not counsel, to instruct the jury on the law. *Halford v. Yandell*, 558 S.W.2d 400, 411 (Mo.App. 1977). Although this issue usually arises in the context of comments made by counsel during closing argument, the same general principle is applicable throughout the trial.

■ In addition to the questions incorporating counsel's own statement of the law, the inquiry was whether the witness agreed with counsel's statement of the law. It is the function of witnesses to present evidence as to matters of fact, and testimony proffered on matters of law is inadmissible. *See Fields v. Luck*, 44 S.W.2d 18, 21 (Mo.1931).

■ Habelitz further contends that by sustaining the two objections, the trial judge "indirectly instructed" the jury that they were not to assume the City would use the property to the full extent of its

rights. Habelitz argues that, as a result, the jury utilized a lesser standard, which does not assume the maximum injury to the property, in determining the damages she should receive for the taking. Habelitz's argument is novel but without merit. The trial court's ruling was proper; there can be no inquiry into whether prejudice resulted from a correct ruling. Point I is denied.

In Point II, Habelitz alleges that the trial court prejudicially erred in refusing its request to submit Instruction A to the jury. Habelitz asserts that the trial court erred because Instruction A accurately reflects Missouri condemnation law when it states that the jury is to assume that 1) the condemnor will make the fullest lawful use of the property taken and 2) the use of the property by the condemnor will be in a manner as injurious to the landowner's remaining rights in the property as the law will permit.

If a Missouri Approved Instruction (MAI) has been promulgated which is applicable it must be given and cannot be replaced by a non-MAI instruction. *Bross v. Denny*, 791 S.W.2d 416, 422 (Mo.App. 1990). If a mandatory MAI instruction is not given, or if an attempt is made to modify it, reversible error is presumed. *Powers v. Ellfeldt*, 768 S.W.2d 142, 146 (Mo.App.1989). When there is no applicable MAI instruction, a non–MAI instruction may be given if it conforms to the requirements of Rule 70.02 in that it is simple, brief, impartial and free from argument. *American Mortg. Inv. Co. v. Hardin–Stockton*, 671 S.W.2d 283, 289 (Mo.App. 1984).

In the instant case, the trial judge gave six jury instructions. Instructions No. 5, MAI 16.02, and No. 6, MAI 9.02, pertain specifically to compensation for the partial taking of Habelitz's property and read as follows:

### Instruction No. 5

The phrase "fair market value" as used in these instructions means the price which the property in question would bring when offered for sale by one willing but not obliged to sell it, and when bought by one willing or desirous to purchase it but who is not compelled to do so.

In determining fair market value you should take into consideration all the uses to which the property may best be applied or for which it is best adapted, under existing conditions and under conditions to be reasonably expected in the near future.

### Instruction No. 6

You must award defendant such sum as you believe was the difference between the fair market value of defendant's whole property immediately before the taking on February 7, 1990, and the value of defendant's remaining property immediately after such taking, which difference in value is the direct result of the taking and of the uses which plaintiff has the right to make of the property taken.

Habelitz submitted Instruction No. A which the trial court refused. Instruction No. A reads as follows:

In determining the loss caused to defendant by acquisition of the right-of-way across defendant's property, you must assume that plaintiff will make the fullest lawful use of the right-of-way taken.

You must also assume that the use of the right-of-way by plaintiff will be in a manner as injurious to defendant's remaining rights in the property as the rights taken by plaintiff will lawfully permit.

Habelitz asserts that Instruction No. A is set forth in Devitt and Blackmar, 3 *Federal Jury Practice and Instructions*, § 93.22 (3d ed. 1977), and would have been given had this case been tried in federal court. Habelitz fails to cite any case in any jurisdiction where such an instruction was given. To require the giving of a non-MAI instruction, Habelitz must prove that the MAI instructions submitted to the jury misstate the law. *Bross*, 791 S.W.2d at 422. Habelitz failed to meet that burden

and, as a result, the mandatory MAI instructions for condemnation cases were given to the jury by the trial judge. Habelitz even concedes in her brief that the well-settled rule in Missouri partial taking eminent domain cases is that the proper measure of damages is the difference between the fair market value of the property immediately before the taking and the fair market value of the property immediately after the taking. *See State ex rel. State Hwy. Comm. v. Nickerson,* 578 S.W.2d 916, 917 (Mo. banc 1979). Instruction No. 6, which was given to the jury, sets forth this exact standard.

Habelitz cites *State ex rel. Hwy. & Tr. Com'n v. Cowger,* 838 S.W.2d 144, 146 (Mo.App.1992), to support her argument that Missouri condemnation law has changed, thus requiring that Instruction No. A be given by the trial court. In *Cowger,* this court used the phrase "maximum injury rule" for the first time in Missouri. The concept the phrase identifies, however, is not new to Missouri law. *Cowger* cited *Shell Pipe Line Corp. v. Woolfolk,* 53 S.W.2d 917 (Mo.1932), as authority for the principle that the "maximum injury rule requires the jury to act upon the presumption that the condemnor will make the 'most injurious use of its rights.'" *Cowger,* 838 S.W.2d at 146. This principle is a well-settled premise of Missouri law and, although it has been given a new name by *Cowger,* the case did not pronounce a new legal principle requiring a non–MAI jury instruction.

Habelitz has not satisfied her burden of proving that the MAI instructions, which were given by the court as Instructions 5 and 6, misstated the law. *Bross,* 791 S.W.2d at 422. The trial court gave the instructions it was required to give and did not err in refusing Habelitz's Instruction No. A. Point II is denied.

The judgment is affirmed.

All concur.