

# In the
# Missouri Court of Appeals
# Western District

| | |
|---|---|
| INTERNATIONAL BROTHERHOOD OF ELECTRICAL WORKERS LOCAL UNION NO. 53, | WD82179 |
| Respondent, | OPINION FILED: |
| v. | September 3, 2019 |
| THE CITY OF INDEPENDENCE, MISSOURI, | |
| Appellant. | |

### Appeal from the Circuit Court of Jackson County, Missouri
### The Honorable James F. Kanatzar, Judge

### Before Division Three:
### Gary D. Witt, Presiding Judge, Edward R. Ardini, and Thomas N. Chapman, Judges

The City of Independence, Missouri (City) fired Ryan Saunders (Saunders) following a workplace incident. The International Brotherhood of Electrical Workers Local Union No. 53 (Local 53) filed a grievance on Saunders's behalf, and the grievance proceeded to arbitration in the manner agreed upon in the parties' collective bargaining agreement. The arbitrator reduced Saunders's punishment and conditionally reinstated his employment, subject to the arbitrator's continued supervision. Citing a provision in the parties' collective bargaining agreement, the City Manager set aside the arbitrator's award. Local 53 sued for breach of the collective bargaining agreement. The circuit court entered summary judgment in favor of Local 53, and

ordered the City to comply with the arbitrator's award (but eliminated continued supervision by the arbitrator). The City filed its timely appeal. We affirm.

*Procedural Summary*

Ryan Saunders (Saunders) had been employed by the City of Independence, Missouri (City), since 2006, as an equipment operator. Saunders's employment was governed by a collective bargaining agreement (CBA) entered into between the City and The International Brotherhood of Electrical Workers Local Union No. 53 (Local 53). On December 17, 2016, Saunders directed inappropriate language at his supervisor; and was later discharged from his employment as a result of his conduct on that date.

Pursuant to the CBA, Local 53 filed a grievance protesting Saunders's discharge, and the matter proceeded through the grievance procedure to arbitration. The parties were represented by counsel and presented testimony and other documentary evidence at the arbitration hearing. In her award the arbitrator concluded that Saunders's misconduct did not constitute "just cause" for his discharge. The arbitrator's award conditionally reinstated Saunders, required his participation in an employee assistance program, and subjected the parties to the arbitrator's supervision to ensure that the terms of reinstatement were met.

Under a provision of the CBA, the arbitrator's award is subject to review by the City Manager in certain limited circumstances. Relying upon the authority granted by this provision, the City Manager rejected the arbitrator's award and upheld the order terminating Saunders's employment. The City Manager found that the arbitrator's award was contrary to the overwhelming weight of the evidence and a "misinterpretation of the law." The arbitration proceedings were not transcribed, and the City Manager was not present for the entire arbitration

2

hearing.[1]  Local 53 filed suit in the Circuit Court of Jackson County, Missouri, alleging that the City breached the CBA by rejecting the award of the arbitrator.  The circuit court entered summary judgment in favor of Local 53 and ordered the City to comply with the arbitration award to conditionally reinstate Saunders; but found that the arbitrator was without authority to supervise compliance with the award.  The City appeals.  We affirm.

### *Factual History*

At the time of his discharge, Saunders was working for the City as a heavy equipment operator in the City's Water Pollution Control Department, and had been employed by the City since 2006.  Saunders, along with other employees of the City's Water Pollution Control Department, were allowed to elect to work additional hours as snow plow drivers for the City's Public Works Department.  On December 17, 2016, Saunders was working as a snow removal driver; and was involved in a motor vehicle accident when his truck slid on an icy road and collided with a utility pole, downing attached power lines.  Saunders called his supervisor to advise him of the accident and to warn him that electrical lines were on the road.  Saunders stayed at the scene of the accident because he felt it was unsafe to leave with the power lines strewn across the road.

Saunders had some knowledge of the area where the accident occurred, as he had previously been shot in the same neighborhood.  While he was awaiting assistance from the City, several men approached his vehicle.  Saunders again called his supervisor and apparently stated

---

[1] As there is no transcript of the arbitration hearing, our recital of the facts is taken from the Summary Judgment record, which includes the arbitrator's award cited by both parties in their respective summary judgment motions. There is nothing in the record that indicates whether or not the City Manager attended any portion of the arbitration hearing.  The arbitrator's award notes who was present representing the City (its counsel) and does not note the presence of the City Manager.  At oral argument counsel for the City acknowledged that the City Manager did not attend the entire arbitration hearing.

that "it would not be his fault if 'things got physical.'" Saunders asked his supervisor for "back up," a request which his supervisor misunderstood to mean "traffic back-up." Saunders then told the men to return to their vehicles, but one of the men continued to approach; and in the course of the ensuing confrontation, Saunders and the other man slipped and fell to the ground.

While the supervisor had told Saunders that he was on his way to assist him with traffic cones and road blocks, he experienced delays while addressing other traffic incidents and never made it to the scene of Saunders's accident. Angered by the City's handling of the accident, Saunders made statements to his supervisor that were disrespectful and profane, but none which directly threatened violence toward his supervisor or anyone else.[2] Several employees were concerned that a physical confrontation might ensue. Saunders was then told he was "done for the day" and was directed to leave the workplace. The City alleged that Saunders was notified (via text message) to report for work the following day, and that he failed to appear. Saunders denied ever receiving the alleged text message.[3]

After an investigation by the City and two pre-disciplinary hearings, the City terminated Saunders's employment citing "insubordination, failure to perform assigned duties, abuse/violence, acts detrimental to the public interest, fighting with a citizen, and leaving a City vehicle unsecured" as reasons for his firing.

The parties' CBA provides that the City has the right to discharge its employees for "just cause." CBA, Art. 3, Section 3.2. The CBA further provides for a "grievance procedure" when

---

[2] During the verbal altercation with his supervisor, Saunders exclaimed that he was "done with this fucking place" and "not coming back to this mother-fucking place."

[3] In determining that the City did not have just cause for firing Saunders, the arbitrator observed that "without some evidence that [Saunders] knew he was to report for snow removal, discharge for that alleged wrongdoing cannot be sustained."

Local 53 disagrees with the City's "application or interpretation of the terms and provisions of [the CBA]." CBA, Art. 15, Section 15.1. Following a multi-step appeals process, the grievance proceeds to arbitration. The arbitrator's award is subject to limited review by the City Manager as follows:

> (f) Decisions of the arbitrator regarding [sic] shall be subject to review by the City Manager. Where the arbitrator's decision resolves issues of fact, the City Manager is not authorized to substitute his or her own judgment for the judgment of the arbitrator if the arbitrator's findings of fact are supported by competent and substantial evidence. The City Manager is authorized to reject the arbitrators [sic] decision only when the arbitrator's findings of fact and decision based thereon are clearly contrary to the overwhelming weight of the evidence viewed in its entirety, together with all legitimate inferences which may be reasonably drawn from that evidence, and in the light most favorable to the findings of fact and decision of the arbitrator based thereon. Where the arbitrator's decision is based upon an application or interpretation of law, the City Manager may review the award to determine if it is in violation of constitutional provisions; if it is for any reason unauthorized by law, or if it is made upon unlawful procedure without a fair hearing. The City Manager can exercise his or her own judgment on these matters after receiving advice from the City Counselor or an authorized designee. Notwithstanding any of the foregoing, the City Manager may reject the decision I [sic] of the arbitrator if such rejection results in a disposition more favorable to the bargaining unit member than the decision of the arbitrator.

CBA, Art. 15, Section 15.3, Step 4(B)(2)(f).

In this matter, Local 53 filed a grievance contesting Saunders's discharge, which proceeded through the grievance procedure to arbitration. An evidentiary hearing was held, and the arbitrator issued her award finding that the City did not have "just cause" to fire Saunders and conditionally reinstating his employment (without back pay) subject to his successful completion of an employee assistance program. Following his completion of the program, the "conditional" element of his reinstatement was to be removed. The arbitrator also retained jurisdiction over the dispute to ensure the parties' compliance for a period not to exceed 120 days.

5

In support of her award, the arbitrator found that there was insufficient evidence to determine whether Saunders should have been faulted for engaging in a physical confrontation at the scene of accident or whether he was merely defending himself.[4] The arbitrator found that the language Saunders directed at his supervisor was "disturbing" and not to be condoned. Nevertheless, the arbitrator determined Saunders's conduct warranted less severe discipline, citing his long history of courteous behavior while working for the City, as well as supervisory evaluations which described him as "above average" in his "working relationships and cooperation." The arbitrator also considered stressors in Saunders's personal life as factors in mitigation. Specifically, Saunders had noted in his 2014-2015 evaluation that he had been required to use more sick leave than usual because his wife had been diagnosed with cancer. Additionally, he expressed anxiety about his children at the arbitration hearing. In light of these findings, the arbitrator concluded that Saunders should be allowed to return to work provided he also underwent counseling so that he could learn to better respond to stressful events.[5]

Following the arbitrator's decision, the City Manager rejected the award, asserting that it was (1) contrary to the overwhelming weight of the evidence; (2) a misinterpretation of the law in that the arbitrator "chose to fashion a remedy about which the City had no notice or opportunity for hearing…."; and (3) a misinterpretation of the law in that the award allowed the arbitrator "to substitute her judgment for that of the City on an on-going basis…."

---

[4] She further noted that arbitrators typically consider it important "[i]n addressing issues involving 'fights'" to determine which party initiated the encounter. Due to "the lack of any eye-witness or any other persuasive evidence pertaining to the…precipitating cause" of the confrontation, the arbitrator found that this incident could not properly serve as a reason for Saunders's firing.

[5] Saunders *was* disciplined, however, in that he was reinstated to his former position *without* back pay.

Local 53 filed a petition in the Jackson County Circuit Court for breach of contract, seeking a judgment reinstating the arbitrator's decision. The parties then filed cross motions for summary judgment. The circuit court entered judgment in favor of Local 53, finding that it could not conclude that the arbitrator's award was contrary to the overwhelming weight of the evidence (citing the lack of a transcript of the arbitration proceedings). The circuit court also ruled that the arbitrator's decision was authorized by law *except* to the extent that it granted her continuing jurisdiction over the parties to monitor their compliance with her award.

The City timely appeals.

### *Discussion*

Our review of a circuit court's grant of summary judgment is essentially *de novo*. *ITT Commercial Fin. Corp. v. Mid-Am. Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Our task in this appeal is to determine whether the City Manager properly exercised his authority to set aside the arbitrator's decision pursuant to the CBA, or whether this action breached the CBA. *See Int'l Ass'n of Firefighters, Local Union No. 42 v. Jackson Cty.*, 524 S.W.3d 217, 223 (Mo. App. W.D. 2017).[6]

At the heart of this case is the question of whether the City had "just cause" to fire Saunders as "just cause" is a condition precedent to termination under the parties' CBA. In interpreting a collective bargaining agreement that permits discharge only for "just cause," the

---

[6] Throughout this opinion we rely on the opinions in *Int'l Ass'n of Firefighters, Local Union No. 42 v. Jackson Cty.*, 524 S.W.3d 217 (Mo. App. W.D. 2017) and *Int'l Ass'n of Fire Fighters, Local Union No. 42 v. Jackson Cty.*, 527 S.W.3d 103 (Mo. App. W.D. 2017) which addressed post-arbitration review of employee discipline pursuant to a collective bargaining agreement. Because the caption of each case citation is identical, for clarification we will refer to each opinion by the name of the employee involved in each case. *Int'l Ass'n of Firefighters, Local Union No. 42 v. Jackson Cty.*, 524 S.W.3d 217 (Mo. App. W.D. 2017) will be referred to as ("*Mitchell*") and *Int'l Ass'n of Fire Fighters, Local Union No. 42 v. Jackson Cty.*, 527 S.W.3d 103 (Mo. App. W.D. 2017) will be referred to as ("*Krantz*").

Eastern District of this Court determined the following definition of "just cause" submitted in a jury instruction to be an accurate statement of the law:

> [T]he term "just cause" means a real cause or basis for dismissal as distinguished from an arbitrary whim or caprice—that is, a cause or ground that a reasonable employer, acting in good faith under the collective bargaining agreement here in question, would regard as good and sufficient reason for terminating the services of an employee.

*Roach v. Consol. Forwarding Co.*, 665 S.W.2d 675, 679 n.2 (Mo. App. E.D. 1984). "'Just cause' in the context of collective bargaining agreements is a term of art which has developed its meaning through labor arbitration hearings." *Id*. at 680. This Court has recognized that an employee's misconduct may be sufficiently serious that it justifies "summary discharge" without the need for progressive discipline; however, when the employee's conduct is less egregious, a less severe punishment is called for:

> Offenses are of two general classes: (1) those extremely serious offenses such as stealing, striking a foreman, persistent refusal to obey a legitimate order, etc., which usually justify summary discharge without the necessity of prior warnings or attempts at corrective discipline; [and] (2) those less serious infractions of plant rules or of proper conduct such as tardiness, absence without permission, careless workmanship, insolence, etc., which call not for discharge for the first offense (and usually not even for the second or third offense) but for some milder penalty aimed at correction.

*Mitchell*, 524 S.W.3d at 225 (quoting Kenneth May, ELKOURI & ELKOURI: HOW ARBITRATION WORKS § 15.3.F.i, at 15-44 to 15-45 (8th ed. 2016)).

In its first point on appeal, the City argues that the City Manager was *required* by the CBA to set aside the arbitrator's award because (as the circuit court found) the arbitrator exceeded her authority insofar as she sought to retain jurisdiction over the parties to monitor their compliance. The City argues further that the City Manager has no authority but to comply with the whole decision or reject the whole decision – in other words, that he had no right to

8

excise an unauthorized portion of the decision and to order compliance with the rest of it. Local 53 argues that this "all or nothing" approach is unsupported by the CBA and that the City Manager should have simply stricken the offending portion of the award and ordered compliance with the remainder.

A collective bargaining agreement is simply a contract, "subject to the same rules of interpretation as other contracts." *Allen v. Globe-Democrat Pub. Co.*, 368 S.W.2d 460, 463 (Mo. 1963). "The primary rule in the interpretation of a contract is to ascertain the intent of the parties and to give effect to that intent." *Marshall v. Pyramid Dev. Corp.*, 855 S.W.2d 403, 406 (Mo. App. W.D. 1993). In attempting to ascertain the parties' intent, "we review the terms of a contract as a whole, not in isolation." *Tuttle v. Muenks*, 21 S.W.3d 6, 11 (Mo. App. W.D. 2000).

The CBA authorizes the City Manager to reject the arbitrator's award "only when the arbitrator's findings of fact and decision based thereon are clearly contrary to the overwhelming weight of the evidence viewed in its entirety…." In the next sentence, the CBA permits the City Manager to review the arbitrator's award (when it is based upon an application or interpretation of law) to determine whether the award is in any way unauthorized by law. The CBA then expressly allows the City Manager to exercise his own judgment on such matters. Nothing in this clause requires the City Manager to reject the award *in toto* when any portion of it (no matter how insignificant) is unauthorized by law. We will not insert a requirement in the CBA which is not there. *Allen*, 368 S.W.2d at 467 ("In interpreting a collective bargaining agreement we must construe them as written, not as we may think they should have been written, and certainly not by interpolating words in them which are not there."). Instead, this Court must give the words used by the parties in the CBA "their natural and ordinary meaning," and we are not permitted to

9

"add provisions by judicial interpretation." *Goodman v. Goodman*, 576 S.W.2d 747, 749 (Mo. App. E.D. 1979).

Furthermore, adopting the interpretation advocated by the City would violate the plain terms of the CBA. The parties' contract indicates that Local 53 members may only be discharged for "just cause." In the instant case, the arbitrator heard testimony from Saunders, his supervisor, and other City employees; examined his relevant employment history, including a prior disciplinary incident[7] and supervisory reviews praising his courtesy and cooperation; considered significant stressors in his personal life as factors in mitigation; and ultimately concluded that the City did not have "just cause" to fire him. The City's interpretation of the CBA would allow the City Manager to ignore this determination and reject the arbitrator's decision based upon a peripheral aspect of the award that has *nothing* to do with whether the City had "just cause" to fire Saunders. Accepting this argument would mean that the City could reject the entire award based upon a technicality and reinstate its termination of an employee without demonstrating that the employee had been fired for "just cause." This contravenes the plain language of the CBA (which only allows the City to terminate an employee with "just cause") and produces an absurd result. *Wildflower Cmty. Ass'n, Inc. v. Rinderknecht*, 25 S.W.3d 530, 536 (Mo. App. W.D. 2000) (an appellate court endeavors to avoid an absurd outcome when interpreting a contract).

The City Manager is permitted by the CBA to exercise his own judgment as to any unauthorized portion of an arbitrator's award. Implicit in this authorization is the obligation that

---

[7] We are not provided any details regarding this disciplinary action, other than it occurred in January 2016, it arose from an incident of insubordination (involving the same supervisor as the December 17, 2016, incident), and Saunders was "contrite and deferential" in its aftermath.

he exercise such judgment in good faith and not in a way that undermines the spirit of the CBA. *Martin v. Prier Brass Mfg. Co.*, 710 S.W.2d 466, 473 (Mo. App. W.D. 1986) (the implied covenant of good faith "prevents one party to the contract to exercise a judgment conferred by the express terms of agreement in such a manner as to evade the spirit of the transaction or so as to deny the other party the expected benefit of the contract."). In this case, good faith required the City Manager to excise the section of the arbitrator's award that exceeded her powers and uphold her central determination that the City lacked "just cause" to fire Saunders.

Point I is denied.

In its second point, the City argues that the arbitrator's decision was contrary to the overwhelming weight of the evidence and made without a fair hearing. The arbitrator found that the City did not have "just cause" to fire Saunders. We afford a "high degree of deference" to the arbitrator's determination on this point. *See Behnen v. A.G. Edwards & Sons, Inc.*, 285 S.W.3d 777, 780 (Mo. App. E.D. 2009).

In ruling on the parties' competing motions for summary judgment, the circuit court noted that it was "severely limited in its review of the evidence because a transcript of the arbitration hearing was never presented to the Court." At oral argument, counsel for the City confirmed that a transcript of the arbitration hearing was not provided to the City Manager (because none was made) and that the City Manager did not attend the entire hearing. The CBA allows the City Manager:

> to reject the arbitrators [sic] decision only when the arbitrator's findings of fact and decision based thereon are clearly contrary to the overwhelming weight of the evidence *viewed in its entirety*, together with all legitimate inferences which may be reasonably drawn from that evidence, and in the light most favorable to the findings of fact and decision of the arbitrator based thereon.

CBA, Art. 15, Section 15.3, Step 4(B)(2)(f) (emphasis added).

11

In support of its argument, the City cites *Mitchell* and *Krantz*. In those cases, the parties' collective bargaining agreement similarly allowed for modification of the arbitrator's decision by the county prosecutor and county executive when the decision was found to be "clearly contrary to the weight of the evidence, viewed in its entirety[.]" *Mitchell*, 524 S.W.3d at 223; *Krantz*, 527 S.W.3d at 112. In both cases, we upheld the county prosecutor and county executive's joint decision to modify the arbitrator's awards and reinstate termination of two assistant prosecutors. *Mitchell*, 524 S.W.3d at 228; *Krantz*, 527 S.W.3d at 116. However, in those cases a transcript was made of the arbitration hearing, the transcript was provided to the county prosecutor and county executive (the parties authorized to review the arbitrator's award), and the arbitration transcript was relied upon extensively by the county prosecutor and executive[8] in setting aside the arbitrator's awards.[9]

In this case, because the City Manager was not present for the entire arbitration hearing and did not have a transcript of the hearing, he was precluded from viewing the evidence in its entirety. Under the plain terms of the CBA, he could not possibly determine whether the award was clearly contrary to the overwhelming weight of the evidence since he did not even have a record of the arbitration hearing (much less the entire evidentiary record). *In re K.S.*, 404 S.W.3d 900, 901 (Mo. App. E.D. 2013) (a transcript of the relevant proceedings is necessary to

[8] In *Mitchell*, the county prosecutor and executive issued an 81-page modification of the arbitrator's decision. 524 S.W.3d at 223. In *Krantz*, the modification decision was 57 pages in length. 527 S.W.3d at 112. It is noteworthy that in the present case, the City Manager's letter rejecting the arbitrator's award barely exceeded a single page. The terse and conclusory nature of the City Manager's letter underscores the lack of evidentiary support for his decision.

[9] We glean these facts from the records on appeal contained in *Mitchell* and *Krantz*. We take judicial notice of the legal files in those cases. *Vogt v. Emmons*, 158 S.W.3d 243, 247 (Mo. App. E.D. 2005) ("A court may take judicial notice of its own records and may take judicial notice of the records of other cases when justice so requires.").

adjudicate whether a judgment is "contrary to the weight of the evidence."). Absent an ability to view the entire record in order to adjudge the arbitrator's findings, the City Manager was not authorized under the CBA to reject the arbitrator's award as being clearly contrary to the overwhelming weight of the evidence.[10]

Under its second point, the City also argues that the arbitrator's award conditionally reinstating Saunders's employment was entered without a fair hearing. Specifically, the City contends the arbitrator "exceeded the evidence" by reinstating Saunders's employment conditioned upon his completion of a remedial counseling program because this outcome "was neither presented nor requested by either party." This argument echoes one of the City Manager's justifications for setting aside the award, in which he complained that the arbitrator "chose to fashion a remedy about which the City had no notice or opportunity for hearing to contribute to a discussion as to the feasibility of the remedy." Again, because the City Manager did not have a transcript of the arbitration hearing and was not present for the entire hearing, the

---

[10] We also lack a sufficient record to determine whether the arbitrator's factual findings were clearly contrary to the overwhelming weight of the evidence. We observe *ex gratia*, that if we accept as true the arbitrator's factual findings and the other uncontroverted facts in the summary judgment record, after excising the provision for continued supervision by the arbitrator, the arbitrator's award conditionally reinstating Saunders was not otherwise unauthorized by law. The City attempts to analogize the facts of the present matter to those at issue in *Mitchell* and *Krantz*. However, *Mitchell* and *Krantz* are clearly distinguishable. Both cases involved the discharge of prosecutors for violations of the Missouri Supreme Court Rules of Professional Conduct, including lying to the tribunal, which we described as being "among the most serious acts of professional misconduct an attorney can commit" made worse because the prosecutor's office "wield[s] enormous power over the life and liberty of other persons." *Mitchell*, 524 S.W.3d at 221, 227; *Krantz*, 527 S.W.3d at 109-10, 113-14. We observed that the attorneys' infractions justified summary dismissal without the need for progressive discipline or prior warnings. *Mitchell*, 524 S.W.3d at 227; *Krantz*, 527 S.W.3d at 115. Saunders's insolence directed toward his supervisor certainly was misconduct that, in combination with other misconduct, and in the absence of mitigating factors, *could* have constituted "just cause" for his discharge. However, in light of the mitigating factors noted by the arbitrator (including Saunders's long work history of interacting well with his coworkers), his misconduct was not the sort of egregious misconduct (as in *Krantz* and *Mitchell*) that *necessarily* constituted "just cause" requiring discharge.

13

City Manager lacked the ability to determine whether the hearing was unfair, and therefore lacked authority under the CBA to reject the arbitrator's award on that basis.[11]

Point II is denied.[12]

### *Conclusion*

The judgment of the circuit court is affirmed.

/s/ *Thomas N. Chapman*

Thomas N. Chapman, Judge

All concur.

---

[11] To be clear, were the Court to address the City's argument concerning the fairness of the hearing on the merits, it would find the argument unpersuasive. The parties' CBA gives the arbitrator discretion to reduce the discipline imposed by the City, which is exactly what the arbitrator did. CBA, Art. 15, Section 15.3, Step 4(B)(2)(e). Pursuant to the plain language of the parties' contract, the City cannot reasonably argue that it was surprised by the arbitrator's decision to impose a less severe form of discipline.

[12] The City stresses the administrative difficulties involved in monitoring Saunders's progress in the employee assistance program, specifically noting that records from the program are confidential. However, the City's policies and procedures manual states that a participant in the program may consent to the release of records kept by the program administrator. The arbitrator's award provides that Saunders's employment is conditioned on his participation in (and completion of) the program. Saunders is therefore required, as a condition of his employment, to apprise the City of his participation in the program. Saunders's consent to release of records would be a means to apprise the City of his participation in (and completion of) the program.